UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| AMICAR RAMOS, | **REPORT AND** |
| Plaintiff, | **RECOMMENDATION** |
| v. | 09-CV-00453-WMS-JJM |
| CARL LUNDIN, et al., | |
| Defendants. | |

_____

This case has been referred to me by Hon. William M. Skretny for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [22].[1]  Before me are the motions of defendants Amy Goldstein and Frank Clark, (collectively "County defendants") to dismiss the Amended Complaint [52, 56] and the motion of plaintiff for leave to file a Second Amended Complaint [65].   Oral argument of plaintiff's motion was held on October 2, 2015 [73].  For the following reasons, I recommend that plaintiff's motion be granted in part and denied in part, and that the County defendants' motions be denied as moot.[2]

### BACKGROUND

Plaintiff commenced this 42 U.S.C. §1983 action *pro se* by Complaint filed on May 12, 2009 [1].  The Complaint alleged two causes of action: the first, against City of Buffalo Police Officer Carl Lundin, for alleging shooting plaintiff during a traffic stop on August 30, 2007 (id., p. 5), and the second, against the former City of Buffalo Police Commissioner H. McCarthy Gipson, for "fail[ing] to protect [plaintiff] by not properly training [the] officer that

---

[1]   Bracketed references are to the CM/ECF docket entries.

[2]   "District courts in this circuit have suggested that a magistrate judge's denial of a motion to amend . . . should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive." Louis v. Metropolitan Transit Authority, 2014 WL 5311455, *1 (E.D.N.Y. 2014).

illegal[y] discharged his firearm" (id., p. 6).  Both defendants were named only in their official capacities.

The Complaint was accompanied by a motion to proceed *in forma pauperis* [2], which was initially denied, without prejudice to a supplemental application.  June 1, 2009 Decision and Order [3].  Although the supplemental application was submitted on June 16, 2009 [4], the Decision and Order granting plaintiff *in forma pauperis* status was not granted until June 13, 2013 [5]. Summonses were issued on June 19, 2013, and on May 28, 2014 plaintiff was granted a 60-day extension to serve defendants.  May 28, 2014 Decision and Order [13].  After summonses were re-issued (June 17, 2014 docket entry), plaintiff obtained entries of default against defendants on August 13, 2014 [20],  which were later vacated because service of the Complaint had not been accomplished. *See* September 24, 2014 Report and Recommendation [27], p. 3; October 22, 2014 Text Order [30]. On October 2, 2014 defendants answered the Complaint, and a Case Management Order was entered on December 3, 2014, which required all motions to join other parties and to amend the pleadings to be filed by January 5, 2015.  Case Management Order [34], ¶2.

Prior to that deadline, plaintiff moved for leave to file an Amended Complaint [39].  With defendants' consent, that motion was granted.  *See* January 16, 2015 Text Order [43]. The Amended Complaint [45] added the County defendants and City of Buffalo Police Officers Alvarez and Symkwiak (collectively with Officer Lundin and Commissioner Gipson "City defendants").  It also amended the allegations against Commissioner Gipson, alleging that he failed to conduct an investigation or take any action against Officer Lundin "after plaintiff prove[d] his innocen[ce], and was acquitted on July 18, 2008".  [45], ¶32, Second Claim.

Whereas the City defendants filed an Answer in response to the Amended Complaint [48], the County defendants moved to dismiss it on statute of limitations grounds [52, 56]. The deadlines of the Case Management Order [34] and the entry of a briefing schedule on the motions to dismiss were held in abeyance while I attempted to locate counsel to appoint for plaintiff. *See* January 16, 2015 Text Order [43]; May 13, 2015 Text Order [58]; June 4, 2015 Order [59].

Shortly after counsel was appointed for plaintiff, he moved for leave to file a proposed Second Amended Complaint, removing the County defendants and Officers Alvarez and Symkwiak from the action, but continuing to assert an excessive force claim against Officer Lundin for the alleged August 30, 2007 shooting. Proposed Second Amended Complaint [65-3], Count I. These portions of the motion are unopposed by defendants. *See* Parker Declaration [66], ¶¶1-2; City Defendants' Memorandum of Law [69-1], p. 2.

However, the City defendants oppose plaintiff's motion to the extent that Count II of the proposed Second Amended Complaint seeks to allege a claim of municipal liability against the City of Buffalo, Buffalo Police Department, City of Buffalo Mayor Byron Brown and Commissioner Gipson, alleging that "[u]nder the leadership Buffalo Mayor Byron Brown, the Buffalo Police Department has fostered a 'broken windows' style of policing wherein police are encouraged to aggressively intrude into the lives of citizens suspected of no crime, or relatively minor crimes", and that "the broken windows policing tactics . . . have . . . result[e]d in increased use of force by their officers". Proposed Second Amended Complaint [65-3], ¶¶20, 22.[3]  It

---

[3]   As the City defendants note, "it is not at all clear" from the proposed Second Amended Complaint whether plaintiff is suing Mayor Brown and Commissioner Gipson in their individual capacities. City Defendants' Memorandum of Law [69-1], p. 3. The proposed Second Amended Complaint does not identify whether they are being sued in their individual capacity, official capacity, or both.

further alleges that "[d]espite the fact that office Ludin (*sic*) had been involved in the shooting Mr. Ramos, and that no witness interviewed by the police department specifically adopted Mr. Lundin's version of events, Mr. Lundin was promoted to detective in 2008" (id., ¶26). Plaintiff alleges that "[t]he broken windows policies of Mayor Brown . . . as well as the culture of misconduct [evidenced by the promotion of Officer Lundin], represent an official policy or custom of the City of Buffalo, and the Buffalo Police Department" (id., ¶28).

## ANALYSIS

A "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. ("Rule") 15(a)(2). However, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party". Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009).

Plaintiff acknowledges that "the statute of limitations has arguably passed with regards to the new claims in Plaintiff's second amended complaint for municipal liability against defendants Byron Brown, City of Buffalo, and the Buffalo Police Department", but argues that the he should be allowed to avail himself of the relation back doctrine of Rule 15(c) since Commissioner Gipson was timely named as a defendant in the Complaint on a failure to train theory, and that it was "only after consulting with counsel, and upon counsel's investigation for the city's 'broken windows' style of policing, that Mr. Ramos became apprised of the new city Defendant's roles in causing his deprivation". Plaintiff's Memorandum of Law [65-1], pp. 2-4, 7.

The City defendants respond that it would be futile to permit plaintiff to assert that claim since it is time-barred, and that plaintiff cannot benefit from the relation back doctrine as the proposed Second Amended Complaint "does not satisfy Rule 15(c)(1)(B) for adding a new

claim or Rule 15(c)(1)(C) for adding new defendants". City Defendants' Memorandum of Law [69-1], pp. 5-7.[4]

Rule 15(c)(1) permits "[a]n amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[5]

"[F]or a newly-added claim to relate back under Rule 15(c)(1)(B), the basic claim must have arisen out of the conduct set forth in the original pleading. The central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the

---

[4] The City defendants also argue that the claim as against the Buffalo Police Department and official capacity claims against Mayor Brown and Commissioner Gipson are duplicative of the claims against the City of Buffalo (City Defendants' Memorandum of Law [69-1], pp. 2-3) and that the personal involvement of Mayor Brown and Commissioner Gipson is not sufficiently alleged in the proposed Second Amended Complaint to support the individual capacity claims (if any) against them (id., pp. 3-5). In light of my recommendation, it is not necessary for me to address these arguments.

[5] "Under Rule 15(c)(1)(A), if the applicable statute of limitations is determined by state law courts should assess both the state and federal relation back doctrines and apply whichever law is more generous." Charlot v. Ecolab, Inc., 97 F. Supp. 3d 40, 74 (E.D.N.Y. 2015). Similar to Rule 15(c)(1)(B), under New York law, amendments relate back so long as the original complaint "give[s] notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." N.Y. C.P.L.R. §203(f). "The driving principle behind both of these rules is that a defendant should not be able to invoke the statute of limitations if he was already on notice of the events giving rise to the plaintiff's claim during the limitations period." Best v. Bell, 2014 WL 1316773, *10 (S.D.N.Y. 2014).

opposing party within the statute of limitations by the general fact situation alleged in the original pleading." ASARCO LLC v. Goodwin, 756 F.3d 191, 202 (2d Cir.) cert. denied, __ U.S.__, 135 S. Ct. 715 (2014). "Provided the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the original pleading, even where the revised pleading contains legal theories not included in the original." White v. White Rose Food, a Division of DiGiorgio Corp., 128 F.3d 110, 116 (2d Cir. 1997); 6A Wright, Miller, Kane, et. al., Federal Practice & Procedure (Civil) §1497 (3d ed. 2015) ("The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading"). "In contrast, even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an entirely distinct set of factual allegations will not relate back." Slayton v. American Express Co., 460 F.3d 215, 228 (2d Cir. 2006).

    The City defendants argue that plaintiff's municipal liability "claims are based on an entirely distinct set of factual allegations that do not relate back . . . to Plaintiff's original pleading". City Defendants' Memorandum of Law [69-1], p. 6. I agree. "To state a claim for municipal liability - otherwise known as a Monell[6] claim - a plaintiff must show that a violation of his constitutional rights resulted from a municipal policy or custom." Hill v. City of New York, 2015 WL 246359, *6 (S.D.N.Y. 2015). A policy or custom may be established by "1) an express policy or custom, 2) an authorization of a policymaker of the unconstitutional practice, 3) failure of the municipality to train its employees, which exhibits a 'deliberate indifference' to the rights of its citizens, or 4) a practice of the municipal employees that is 'so permanent and well settled as to imply the constructive acquiescence of senior policy-making

---

[6]   Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978).

officials.'" Biswas v. City of New York, 973 F. Supp. 2d 504, 536 (S.D.N.Y. 2013) (*quoting* Pangburn v. Culbertson, 200 F.3d 65, 71-72 (2d Cir. 1999)).

Plaintiff argues that he "included a failure to train claim in his original complaint". Plaintiff's Reply Memorandum of Law [72], p. 5.[7] To plead Monell liability based on a failure to train, a plaintiff must allege: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights" Walker v. City of New York, 974 F.2d 293, 297–98 (2d Cir.1992).

Even assuming that the Complaint sufficiently pled a claim for Monell liability, the factual allegations supporting that claim are very different from the factual allegations supporting the Monell liability alleged in the proposed Second Amended Complaint. Whereas the Complaint (as liberally interpreted) alleged that Commissioner Gipson's practice of failing to train his officers created municipal liability, the municipal liability alleged in the proposed Second Amended Complaint is premised on an express policy of aggressive policing implemented by Mayor Brown. This amendment, which alleges that a different policymaker outside of the City of Buffalo Police Department is primarily responsible for the alleged conduct on a distinct ground of municipal liability, is not one that simply renders the allegations of the

---

[7] Plaintiff's reliance on the Complaint, rather than the Amended Complaint, is likely attributable to the fact that "Rule 15(c) . . . requires that the notice of the basic claim must be given within the applicable statute of limitations." Coronna v. County of Suffolk, 2008 WL 2371421, *5 (E.D.N.Y. 2008). Since the Amended Complaint was filed well beyond the three year statute of limitations for a §1983 action, it cannot serve as notice of the claim plaintiff seeks to allege in the proposed Second Amended Complaint. *See* id.

Complaint more definite and precise. Therefore, I conclude that defendants did not have adequate notice of the Monell claim raised in the proposed Second Amended Complaint, and recommend that plaintiff's motion be denied to the extent it seeks to assert that claim. *See, e.g.*, Lekic v. 222 E. 8th St. LLC, 2012 WL 4447625, *3 (E.D.N.Y. 2012) ("Even though plaintiff's expanded claims in his proposed amended complaint are based on the same statutes and same type of conduct as alleged in the original complaint, they are nonetheless based on an 'entirely distinct set' of factual allegations").[8]

## CONCLUSION

For these reasons, I recommend that plaintiff's motion for leave to file a Second Amended Complaint [65] be granted to the extent that it alleges an excessive force claim against Officer Lundin, but otherwise be denied, and that County defendants' motions to dismiss the Amended Complaint [52, 56] be denied as moot. Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by February 25, 2016 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

---

[8] Since the addition of new parties under Rule 15(c)(1)(C) also requires a plaintiff to satisfy Rule 15(c)(1)(B), it is not necessary for me to address whether the proposed Second Amended Complaint adds new parties or whether the additional requirements of Rule 15(c)(1)(C) are satisfied.

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated:  February 8, 2016

>  /s/ Jeremiah J. McCarthy
>  JEREMIAH J. MCCARTHY
>  United States Magistrate Judge